UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FERNANDO RAMIREZ, Individually, On Behalf of  :
All Others Similarly Situated and as Class
Representative,                                                          :

                              Plaintiff,                              :          **MEMORANDUM AND ORDER**

              -against-                                              :                13-CV-9073 (KNF)

RICOH AMERICAS CORPORATION,              :

                              Defendant.                          :
-----------------------------------------------------------------X
RICOH AMERICAS CORPORATION,              :

                  Counter Claimant,                          :

              -against-                                              :

FERNANDO RAMIREZ,                                      :

                  Counter Defendant.                      :
-----------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

On December 23, 2013, Fernando Ramirez, formerly employed by Ricoh Americas

Corporation as a technician, commenced this action for unpaid wages and overtime

compensation, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and

New York Labor Law ("NYLL"), Article 19 §§ 650-665.  The parties consented to jurisdiction

by a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure.  Before the Court is the plaintiff's motion, for an order: (i) "granting preliminary

approval of the Joint Stipulation of Class Settlement and Release Between plaintiff and defendant

('Settlement Agreement')"; (ii) "conditionally certifying the following settlement class under

Fed. R. Civ. P. 23(a) and (b)(3) and the Fair Labor Standards Act for purposes of effectuating the

settlement: All individuals who are employed or were employed in New York by Defendant or its predecessors/affiliates in a technician position between December 23, 2007 and July 24, 2014"; (iii) "appointing Lipman & Plesur, LLP as Class Counsel"; (iv) "approving plaintiff's Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing"; (v) "approving plaintiff's proposed Claim Form"; (vi) "approving plaintiff's proposed Election Not to Participate in Settlement"; (vii) "approving plaintiff's Notice of Proposed Settlement"; and (viii) "granting such other and further relief as the Court deems just and proper."

***Plaintiff's Contentions***

The plaintiff contends that "[t]he Settlement Agreement creates a Settlement Payment of $325,000 inclusive of court-approved Class Counsel Attorneys' Fees and Costs, the reasonable fees and expenses of the Settlement Administrator, any court-approved Class Representative Service Award, Individual Allocation payments to Claimants and Defendant's share of payroll taxes on payments to Claimants to which such taxes are applicable." The Settlement administrator will be responsible for mailing the notice materials to eligible settlement participants, calculating each claimant's individual allocation and mailing the checks. According to the plaintiff, "[t]he Settlement Agreement provides releases of claims for the Class Representative, Participating Class Members, Claimants, Class Counsel and Released Parties." The plaintiff asserts that "[t]he Settlement Class consists of all current and former employees of Defendant, IKON Office Solutions, or their affiliates or predecessors in the state of New York who have been employed in a technician position between December 23, 2007 and July 14, 2014." He maintains that "[t]he allocation formula calculates each Claimant's Individual Allocation from the Settlement Pool based on the number of weeks worked between December 23, 2007 and July 14, 2014 as a percentage of total weeks worked for all Class Members, with

unclaimed amounts then reallocated to the Claimants on a pro rata basis." According to the plaintiff, his counsel "applies for one-third of the Fund as attorneys' fees," and, "subject to Court's approval, the Class Representative will receive an additional payment of $20,000 in recognition of the services he rendered on behalf of the class ('Service Award')."

The plaintiff contends that the settlement is substantively fair because: (1) "far more discovery would be required prior to trial to establish liability and damages, including depositions of Defendant, Class Members and possibly experts," and "[a] fact-intensive trial would be necessary and would take a great deal of time for the Court," followed by a likely appeal, "considering the causes of action asserted and the conflicting case law in this area"; (2) the class representative supports the settlement; (3) "a significant exchange of documents and information has taken place, as well as Plaintiff's deposition"; (4) "there is a significant risk involved in proving both liability and damages," and establishing liability and damages "would require greater and uncertain factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy"; (5) the defendant "may contest superiority, arguing that a class action is not a superior method to resolve these claims and that a class trial would not be manageable," and the settlement "would eliminate this risk," and "[t]here is a risk that a class will not be certified and/or that a class could be decertified at some point"; (6) "[e]ven if Defendant could afford to pay more, such a factor is not determinative"; and (7) "[t]here is a possibility of a greater recovery but Plaintiff would have to succeed on all claims and appeals in an area of law that is less than settled."

According to the plaintiff, "the Court should certify the following Fed. R. Civ. P. 23 class for purposes of effectuating the settlement: all individuals who are employed, or formerly have been employed, by Defendant in the position of technician or a comparable position in the [s]tate

of New York at any time during the period from December 23, 2007 to July 14, 2014." The plaintiff asserts: (a) "there are approximately 400 class members"; (b) the action "involves common factual and legal issues: whether Defendant failed to pay for all time worked and for overtime for time worked over 40 hours"; (c) "his claims arise from the same factual and legal circumstances that form the bases of the class members' claims"; (d) "there is no evidence that the Plaintiff's and the class members' interests are at odds"; (e) "certification is appropriate under Rule 23(b)(3)"; (f) "all class members worked for Defendant as technicians and were subjected to Defendant's wage and hour policies" which violated New York law; (g) "employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications"; and (h) "Lipman & Plesur, LLP, should be appointed as class counsel." Moreover, the proposed "Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing" is appropriate, and the standards for collective action certification under the FLSA are met.

In support of his motion, the plaintiff submitted a declaration by his attorney, Lizabeth Schalet ("Schalet"). Schalet states that she graduated from the City of New York Law School and was admitted to the New York bar in 1987. She worked at the Legal Aid Society and the New York City Commissions on Human Rights before joining Lipman & Plesur, LLP, where she handles "only employment and primarily wage-hour matters." In or about 2001, Schalet became a member of the firm. Schalet contends that she has been co-counsel on several wage and hour cases that the courts certified as class and collective actions. She states that the parties "have exchanged discovery requests and responses, exchanged data regarding payroll history, employment, hours and weeks worked of Class Members, and testimony was provided in a

deposition." According to Schalet, counsel conducted "their own independent investigation and evaluation with numerous interviews with putative Class Members." Schalet explains that the settlement "is the result of lengthy, arms-length negotiations between the Parties." She contends that the class representative provided factual information and documents to counsel, sat for a deposition and assisted counsel in preparing for the settlement. Schalet states that the parties signed the settlement agreement and release, on or after July 28, 2014. Attached to Schalet's declaration is Exhibit A, "Joint Stipulation of Class Settlement and Release," accompanied by: (1) Exhibit A, "[Proposed] Order Granting Preliminary Approval of Settlement"; (2) Exhibit B, "Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing"; (3) Exhibit C, "Claim Form"; (4) Exhibit D, "Election Not To Participate in Settlement"; (5) Exhibit E, "Notice of Proposed Settlement"; and (6) Exhibit F, "[Proposed] Order (1) Confirming Certification of Class and Collective Action for Settlement Purposes; (2) Granting Final Approval of Class and Collective Action Settlement; and (3) Entering Final Judgment."

***Legal Standard***

District courts have discretion in approving class settlements under Rule 23(e) and they "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness. The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." Id. In reviewing the settlement terms, courts consider the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000)).

Additionally, courts must ensure that the settlement is a "result of arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982).

***Application of Legal Standard***

Procedural Fairness: The Negotiation Process

The plaintiff is represented by counsel who claims experience in obtaining certification of wage and hour class and collective actions. However, the information provided to the Court about the settlement negotiation process in this action is scant. Although counsel contends that the settlement "is the result of lengthy" negotiations between the parties, that contention is refuted by the record. The action was commenced on December 23, 2013, and was settled on or after July 28, 2014. Thus, the action was settled within a relatively short time period: seven months. The plaintiff contends that "a significant exchange of documents and information has taken place" and he obtained "a large number of payroll documents, time records and other information as well as policies," without providing any detail about the extent of the exchange. The plaintiff was deposed, and he "interviewed workers to determine their hours worked, their wages, and other relevant information." No information is provided about the nature and extent of the plaintiff's "assisting counsel in preparation for the settlement." Notwithstanding the

scarcity of information about the negotiation process, the plaintiff was represented by counsel who has experience in wage and hour cases that courts have certified as class and collective actions in the past, certain investigation and discovery activities occurred and the settlement agreement was negotiated by the represented parties.  Thus, it appears that the negotiation process was procedurally fair.

<u>Substantive Fairness: The Grinnell Factors and the Proposed Settlement Agreement</u>

*(1) Complexity, Expense and Likely Duration of the Litigation*

The plaintiff contends that "far more discovery would be required prior to trial to establish liability and damages, including depositions of Defendant, Class Members and possibly experts," trial would "take a great deal of time for the Court," and appeal is likely considering "the conflicting case law in this area."  The plaintiff does not identify how much more discovery would be required prior to trial, except that additional depositions would be needed, how many class members would need to be deposed and what "experts" would "possibly" be required in an action, such as this one, consisting solely of three claims: (1) "Violation of the Overtime Provisions of the FLSA"; (2) violation of the New York Minimum Wage Act": and (3) "Violation of the Overtime Provisions of the New York Labor Law."  Moreover, the plaintiff does not identify "the conflicting case law in this area," or what the anticipated expense and likely duration of the litigation might be, in the absence of the settlement agreement.

This is a simple action claiming damages pursuant to well-settled federal and state law governing minimum wage and overtime compensation claims.  The plaintiff failed to show that the instant litigation would be complex, expensive and time-consuming.  Thus, this factor does not militate in favor of granting the plaintiff's motion.

*(2) Reaction of the Class to the Settlement*

Although the named plaintiff contends that he supports the settlement agreement, no evidence is provided that any putative class member supports the settlement.  The plaintiff failed to identify any effort he made to obtain any putative class member's reaction to the proposed settlement agreement.

"A class representative is a fiduciary to the class.  If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  Wesley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720 (E.D.N.Y. 1989).  The fact that the plaintiff requests $20,000, or 5.71% of the settlement fund, as his service award, and there is absent from the motion record any evidence of the reaction of putative class members to the settlement, are of concern to the Court.  The Court finds that this factor does not militate in favor of granting the plaintiff's motion.

*(3) Stage of the Proceedings and the Amount of Discovery Completed*

The plaintiff contends that "a significant exchange of documents and information has taken place" and the plaintiff obtained "a large number of payroll documents, time records and other information as well as policies.  However, no detail is provided by the plaintiff about the amount of documents and information exchanged, the frequency of the exchanges and the period of time during which documents and information were exchanged.  A conclusory contention that the plaintiff obtained "a large number" of documents is not sufficient to show that significant discovery took place.  No specifics are provided by the plaintiff about the sources from which the plaintiff obtained the documents and information, the form and content of those documents and the information, or the quantity of the documents and information obtained.  Also lacking is any

detail about the number of "workers" the plaintiff interviewed to determine the hours they worked and their wages.  The Court notes that, during the short period of approximately seven months between the filing of the complaint and the settlement of this action, only one deposition was taken and an unidentified amount of other discovery activities occurred.  Accordingly, this factor does not militate in favor of granting the plaintiff's motion.

### (4 & 5) Risks of Establishing Liability and Damages

The plaintiff contends that: (i) "there is significant risk involved in proving both liability and damages"; and (ii) establishing liability and damages "would require greater and uncertain factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy."  However, the plaintiff identifies neither the nature of  the "significant risk" he references nor its extent.  Conclusory allegations of risks without specification of any risk pertinent to this particular action are insufficient to make this factor militate in favor of granting the plaintiff's motion.

### (6) Maintaining the Class Action Through the Trial

The plaintiff asserts that "[t]here is a risk that a class will not be certified and/or that a class could be decertified at some point," since "there are numerous locations involved," and the defendant "may argue that individual questions preclude class certification, including whether the relevant policies were uniform at all locations."  However, the plaintiff's assertion that "numerous locations" are involved is unsubstantiated because the complaint lacks any allegation of "numerous locations," and the plaintiff does not point to any evidence of the number of "locations" that might be involved.  The plaintiff also contends that the defendant "may contest superiority, arguing that a class action is not a superior method to resolve these claims and that a class trial would not be manageable," and the settlement "would eliminate this risk."  Other than

making the conclusory assertion that the defendant may contest the superiority of proceeding to trial via a class action, the plaintiff failed to explain why or how, in this particular action, the defendant's potential superiority argument would be difficult to refute.  While the risk in maintaining the class action through trial exists in any class action litigation, it is not specified and substantiated here, and this factor does not militate in favor of granting the plaintiff's motion.

<em>(7) Ability of the Defendant to Withstand a Greater Judgment</em>

The plaintiff contends that "[e]ven if Defendant could afford to pay more, such a factor is not determinative."  Although it is correct that the defendant's ability to withstand a greater judgment is not dispositive on the issue of fairness of the settlement, this factor does not militate in favor of granting the plaintiff's motion.

<em>(8 & 9) Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation</em>

The plaintiff did not address *Grinell* factor Nos. 8 and 9, namely the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  As the plaintiff failed to specify the risks attendant to this particular action, as mentioned above, the Court is unable to conclude that these two factors militate in favor of granting the plaintiff's motion.

<u>The Proposed Settlement Agreement</u>

The plaintiff's notice of motion seeks conditional certification of the following settlement class under Fed. R. Civ. P. 23 and the collective action under FLSA: "All individuals who are employed or were employed in New York by Defendant or its predecessors/affiliates in a technician position between December 23, 2007 and July 14, 2014."  However, the plaintiff's

memorandum of law "requests that the Court conditionally certify the following Fed. R. Civ. P. 23 class: all individuals who are employed, or formerly have been employed, by Defendant in the position of technician or a comparable position in the [s]tate of New York at any time during the period from December 23, 2007 to July 14, 2014." The proposed definitions of the class appearing in the plaintiff's notice of motion and his memorandum of law are inconsistent. The plaintiff nowhere explains what "a comparable position" to the position of technician means. Most importantly, no definition of the class is provided in the proposed settlement agreement or any proposed notices attached to that agreement. The inconsistency of the proposed class definition in the plaintiff's notice of motion and the memorandum of law and the absence of a definition of the proposed class from the proposed settlement agreement and notices, makes it unclear to the Court—as it will make it to anyone who would receive the plaintiff's notices—who the putative class members might be. This flaw alone is sufficient to reject the plaintiff's proposed settlement agreement. A review of the "Joint Stipulation of Class Settlement and Release" raises concerns for the Court about the substantive fairness of the settlement agreement. As explained below, numerous other deficiencies make the proposed settlement agreement substantively unfair.

In section "1. Terms of Stipulation and Agreement of Settlement," the "named Plaintiff" is identified as "Fernando Ramirez ('Class representative')" and the defendant is identified as "Ricoh Americas Corporation ('Defendant')." Section 1 states that the agreement is made "by and among the Class representative (for himself and the Participating Class Members, as defined below) and Defendant." A "Participating Class Member" is defined in Section " 2. Definitions" as "a Class Member who has not completed and timely submitted an Election Not to Participate in Settlement form." However, "Class Member" is not defined. It is confusing and troubling that

11

the term "Class Member" is not defined, but used by the parties throughout the "Joint Stipulation

of Class Settlement and Release."  In particular, section "8. Notice to the Class of the Settlement

and the Claim Process" directs "Class Members" to act within a certain time period and explains

the consequences for failing to act within the prescribed time period.  Without a definition of

"Class Member," it remains unknown who such an individual might be or who precisely is

directed to act.  Even more troubling with respect to definitions in the proposed settlement

agreement is Exhibit B, attached to Schalet's declaration, "Notice of (1) Proposed Class

Settlement and (2) Final Settlement Approval Hearing."  The notice states:

> a.       To Whom This Notice Is Directed
> This Notice, which has been approved by the Court, is to notify Class members (defined
> below) in the class action "*Fernando Ramirez, et al. v. Ricoh Americas Corporation*"
> currently pending in the United States District Court for the Southern District of New York,
> of the proposed Settlement of that case. . . .
> b.       What is a Class Action?
> A class action is a lawsuit in which the claims and rights of many people ("Class Members")
> are decided in a single court proceeding. . . .

It appears that the term "Class Members" refers to "many people," without any qualifier or

explanation.  Since the proposed class is not defined in the proposed settlement agreement, the

purpose of using an undefined term in the "Notice of (1) Proposed Class Settlement and (2) Final

Settlement Approval Hearing" is unclear.  Moreover, assuming that the proposed notice contains

a definition of the term "Class Members," defining the term that is used in the proposed

settlement agreement, in the proposed notice, is improper.  Additionally, the term "Class

Members" is attempted to be defined only as "many people," which is a meaningless,

inappropriate, inadequate and unreasonable definition.

The term "Eligible Settlement Participants" is defined, in the definitions section, as "all

current and former employees of Defendant, IKON Office Solutions, or their affiliates or any of

their predecessors in the state of New York who have been employed in a technician position between December 23, 2007 and July 14, 2014." However, the term "Eligible Settlement Participants" is not used anywhere in the proposed settlement agreement, except in the definitions section; thus, the purpose of defining a term that is not used anywhere in the proposed settlement agreement is unclear and its use confusing. The term "Claimant" is defined, in the definition section, as "Eligible Settlement Participants [sic] who submit timely and valid claims to the claims administrator." However, the word "claims" is not defined. The term "Claim Form" is defined as "the form by which Class Members may claim their Settlement Shares and consent to join the FLSA collective action, substantially in the form attached to this Settlement as Exhibit C." Exhibit C is entitled "Claim Form." It appears that the parties meant to define the term "Claimant" as an "Eligible Settlement [Participant] who submit[s] [a] timely and valid *Claim Form* to the claims administrator," not one "who submit[s] [a] timely and valid [claim] to the claims administrator."

The definition of "Eligible Settlement Participants" refers to "IKON Office Solutions," an unidentified entity that is not a party to this action, and its relevance to this action is unclear. No allegation is made in the complaint concerning "IKON Office Solutions," and no explanation is provided in the proposed settlement agreement or the plaintiff's submissions about that entity. It is not clear what role, if any, this nonparty entity has with respect to the settlement agreement, since the agreement is made solely between the plaintiff and the defendant, as noted in the proposed settlement agreement's first paragraph, which states that it "is made and entered into by and among named Plaintiff Fernando Ramirez ('Class Representative'), individually and on behalf of the putative class, and Defendant Ricoh Americas Corporation ('Defendant')."

13

Moreover, Section 1 of the proposed settlement agreement seems to suggest that the settlement agreement between "the Class Representative (for himself and the Participating Class Members, as defined below) and Defendant," includes "the Class Counsel's Released Claims," which "shall be finally and fully compromised, settled, and released."  Class counsel is not a party to this action or a party to the settlement agreement, and the "Class Representative (for himself and the Participating Class Members)" cannot act on "Class Counsel's" behalf to release any of "Class Counsel's" claims.

Section "2. Definitions," in the proposed settlement agreement, also contains the following text: "'Claims Administrator' or 'Settlement Administrator' means the third-party claims administration firm selected by the Parties and approved by the Court.  The Parties have agreed to Simpluris as the Claims Administrator for this Court's consideration and approval." No mention is made in the plaintiff's motion papers of the plaintiff's request "for this Court's consideration and approval" of the claims administrator.  While it is not clear why the parties seek the Court's approval of their mutually agreed upon choice for claims administrator in the first place, the content of this definition is misleading and untrue.

Section "3.  Recitals," in the proposed settlement agreement, includes the following text: "On December 23, 2013, the Class Representative commenced the Action on behalf of himself and all other individuals allegedly similarly situated to him (the 'Proposed Class') with respect to the claims he asserted."  The "Proposed Class" is not defined.  Section "21. Captions and Interpretations" states: "  Each term of this Settlement is contractual and not merely a recital, except for those denominated as recitals in Section 3."  It is not only disturbing that the parties did not define the term "Proposed Class," but also that they only described the "Proposed Class" in the Recitals section as "all other individuals allegedly similarly situated to him . . . with respect

14

to the claims he asserted," without explaining the nature of the "similarly" that exists between the plaintiff and other individuals who would comprise the class.

Section "4. Duties of the Parties To Seek Prompt Court Approval," in the proposed settlement agreement, provides, inter alia, that: "No later than July 28, 2014, Plaintiff will move the Court for entry of the Preliminary Approval Order, including the following terms: . . . (vi) Appointing a Settlement Administrator to exercise the duties set forth in this Settlement." The plaintiff's notice of motion does not include a request to the Court to appoint a settlement administrator, and his motion papers make no mention of any such a request. Thus, this part of section 4 is misleading and untrue.

Section "6. Appointment and Duties of Settlement Administrator," in the proposed settlement agreement, provides, inter alia: "Subject to the approval of the Court, the Parties have agreed to the appointment of a Settlement Administrator to perform the following duties in connection with administration of the Settlement." Neither the plaintiff's notice of motion nor his memorandum of law mentions the plaintiff's request for appointment of a settlement administrator, as mentioned above. Moreover, section 6 appears to confer on the settlement administrator, improperly, the power to resolve "disputes (if any) by Class Members regarding the number of Compensable Work Weeks or other matters, and [to notify] Class Counsel and Counsel for Defendant of such disputes and their resolution." Any agreement purporting to confer power on the settlement administrator to entertain and resolve disputes by class members on any matter is improper, against the interest of the absent class members and against public policy.

Section "7. CAFA[1] Notice" states:

> Pursuant to CAFA, within ten (10) days after the Class Representative files his motion for preliminary approval of the Settlement, Defendant will mail the CAFA Notice to the Attorney General of the United States, the Attorney General of the State of New York, and the Attorney General of each other state where Class Members reside according to Defendant's records. The Parties intend and believe that the CAFA Notice pursuant to the procedures described in this section comply with the requirement of CAFA; will seek approval of these procedures for CAFA Notice in Plaintiff's motion for preliminary approval of the Settlement; and will request the Court to adjudicate the validity of the CAFA Notice in the motion for final approval of the Settlement and bar any Class Member's claim to void or avoid the Settlement under CAFA.

The plaintiff's motion papers do not mention any request for "approval of these procedures for CAFA Notice in Plaintiff's motion for preliminary approval of the Settlement." Section 7 appears to suggest, improperly, that the Court's approval is required in connection with the CAFA notice, or that the Court may "bar any Class member's claim to void or avoid the Settlement under CAFA." The defendant is required to comply with notifications to appropriate federal and state officials, pursuant to 28 U.S.C. § 1715. The statute neither contemplates court adjudication or approval of the CAFA notice or CAFA procedures nor provides the courts with authority to bar any class member from acting in connection with it. Thus, the portion of section "7. CAFA Notice" referencing the Court is misleading and improper.

Section "8. Notice To the Class of the Settlement and the Claim Process," in the proposed settlement agreement, provides, inter alia:

> (v)    Class Members will have the opportunity to challenge the information pre-printed on their individualized Claim Forms by submitting a written challenge along with their signed Claim Form and supporting documentation to the Settlement Administrator within the time period provided for submitting the Claim Form. Any challenges to the information pre-printed on the Claim

---

[1] CAFA is an acronym for the Class Action Fairness Act, 28 U.S.C. § 1715.

Form should be supported by documentary evidence; the Settlement Administrator may reject any challenge not supported by such evidence.

(vi)     Timely challenges submitted with documentary evidence will be resolved without hearing by the Settlement Administrator after consultation with Class Counsel and Counsel for Defendant.  Defendant's determinations from its records as to Compensable Work Weeks will be presumed correct, but the Settlement Administrator will evaluate the evidence submitted by the Class Member and will make a final determination based on its evaluation of all the evidence presented.

This section appears to confer on the claim administrator the power to resolve "disputes (if any) by Class Members regarding the number of Compensable Work Weeks or other matters," as provided in Section 6(a)(ii) of the notice.  Any challenge to the proposed settlement agreement or any matter respecting it must be made in writing and presented to the Court for resolution, not the claim administrator.  The claim administrator has no authority to resolve disputes concerning the proposed settlement agreement or any matter respecting it that may be raised by putative class members.  Any term that suggests the contrary or purports to vest anyone else with the authority to resolve disputes, "without [a] hearing," is invalid, against the interest of the putative class members, violative of the putative class members' due process rights and against public policy.

Section "8. Notice To the Class of the Settlement and The Claim Process," in the proposed settlement agreement, also provides, inter alia:

ii)     A Class Member who does not properly complete, execute, and timely submit an Election Not to Participate in Settlement in the manner and by the deadline specified above will automatically become a Participating Class Member and be bound by all terms and conditions of the Settlement, including the release of all Released State Law Claims, if the Settlement is approved by the Court, and be bound by the Final Approval Order, regardless of whether he or she has objected to the Settlement or timely submitted a completed, executed Claim Form.

This provision is invalid because it appears to bind any objector who does not make and submit a timely Election Not to Participate in Settlement, before that person's objection is resolved by the

17

Court.  The purpose of permitting a putative class member to object is to provide an opportunity for that person to be heard and for the Court to make a determination on the objection, before the person is bound by the terms of the settlement agreement to which she or he is objecting.  It is inconsistent to provide the right to object to the proposed settlement agreement while simultaneously binding the objector to the terms of the very settlement agreement to which she or he objects.

Moreover, section 8 contains numerous conflicting deadlines, providing a dedicated time to act and, at the same time, making such an act untimely.  For example, section 8 c., iv) provides:

> If a Class Member properly completes, executes, and timely submits both an Election Not to Participate in Settlement and a Claim Form, the Settlement Administrator shall, within five (5) business days after receipt of the second of the two documents, mail a letter (the terms of which will be agreed upon by Defendant's Counsel and Class Counsel) to such Class Member seeking clarification as to whether the Class Member intends to participate in the Settlement.  Absent a response from such Class Member postmarked within ten (10) business days after the date of the mailing of the follow-up letter, the Class Member shall be deemed to be a Claimant and not to have opted out of the Settlement.

The proposed settlement agreement provides 45 days from the date on which the settlement administrator mails the notice materials to submit an Election Not to Participate form, and 60 days after the date on which the settlement administrator mails the notice materials to submit a Claim Form.  Where the person submits both forms, 5 business days are provided for the claim administrator after the receipt of the second of the two documents to mail a letter to that person seeking clarification, and 10 business days after the date of the mailing of the follow-up letter are provided for that person to submit the clarification response.  This means that the longest period of time contemplated in connection with the timely submission of both forms is 60 days + 15 business days from the date on which the settlement administrator mails the notice materials.

However, section 8 e. contains deadlines for the claim administrator to report to the parties, the names of those who submitted "Elections Not to Participate in Settlement" forms and "Claim Forms," both "valid" and "invalid," as well as "submit for filing, in support of the plaintiff's motion for final approval a declaration attesting to its mailing of the Notice Materials," that expire prior to the deadline set forth in section 8 c. iv).  The proposed deadlines are conflicting, inconsistent, misleading and not in the interest of the putative class members.

Section "9. Right to Rescind," in the proposed settlement agreement, states:

In the event that by number more than 9 Class Members submit valid Elections Not to Participate in Settlement, Defendant will have the right to rescind the Settlement and the Settlement and all actions taken in its furtherance will be null and void. Defendant must exercise this right within ten (10) days after the Settlement Administrator sends to Class Counsel and Counsel for Defendant the Opt-Out Report, provided no untimely Election Not to Participate is accepted by the Settlement Administrator pursuant to Section 8(d)(2), or within five (5) days of the date that the last untimely Election Not to Participate that is accepted by the Settlement Administrator pursuant to Section 8(d)(2) is reported to Defendant.

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999).  "A settlement contract may not be unilaterally rescinded.  Upon breach by one party, the other party may obtain damages or specific performance as appropriate.  Both parties to the contract may, of course, agree to rescind the contract." Village of Kaktovik v. Watt, 689 F. 2d 222, 230 (D.C. Cir. 1982).  Section 9, giving a unilateral right to the defendant to rescind the settlement agreement is unenforceable and contrary to the purpose of the wage and overtime compensation federal and state laws.  The unilateral right to rescind, if at least 10 persons opt-out of the class action, is inconsistent with and contrary to the plaintiff's request to certify the class, based on "the approximately 400 class members."  Moreover, certifying a proposed class and collective action for the purpose of a proposed settlement agreement, which

19

contains a defendant's unilateral right to rescind such as this one does, would result in an unnecessary and unjustifiable waste of a court's time and resources and those of the parties.

Section "11. Waiver of Right to Appeal," in the proposed settlement agreement, provides that "the Class Representative, Class Members who did not timely submit an objection to the Settlement, Class Counsel, and Defendant hereby waive any and all rights to appeal from the Final Approval Order." Class Counsel is not a party to this action or the settlement agreement, and any waiver by class counsel is improper and invalid.

Section "12. Reversal or Material Modification of Judgment on Appeal," in the proposed settlement agreement, provides:

> If, after a notice of appeal or petition for writ of *certioari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Final Approval Order such that there is a material modification to the Settlement, and that court's decision is not completely reversed and the Final Approval Order is not fully affirmed on review by a higher court then the Class Representative through Class Counsel and Defendant will each have the right to void the Settlement, which the Party may do by giving written notice to the other Parties, the reviewing court, and the Court not later than fourteen (14) days after the reviewing court's decision vacating, reversing, or materially modifying the Final Approval Order becomes Final.

Section 12 provides a right to void the settlement agreement to "the Class Representative, through Class Counsel" and the "Defendant," but not to any other person who will be bound by the settlement agreement. Giving the right to "the Class Representative" and not to the other class members who may be bound by the settlement agreement appears to give an advantage to the named plaintiff and puts him at odds with the putative class members who are deprived of that right. As such, it is improper and contrary to the interests of the absent class members whose rights the named plaintiff is supposed to protect.

Section "14. Distribution of the Settlement Fund," in the proposed settlement agreement, provides, inter alia:

    a.        After the Final Approval Order becomes Final. The Settlement Administrator will distribute the proceeds of the Settlement Fund as follows: i) Within ten (10) days after the Final Approval Order becomes Final, the Settlement Administrator will make the following payments from the Settlement Fund:

        1.      To every Claimant, his or her Individual Allocation, as calculated based on the formula in paragraph 14 a.ii below.

        2.      To the Class Representative, if he has not submitted an Election Not to Participate in Settlement, which would be grounds for the Defendant to nullify the Settlement, in addition to his Individual Allocation, Class representative's Service Award of $20,000 or in any lesser amount directed by the Court, for which the Settlement Administrator will issue a Form 1099. The Class representative is responsible for all federal, state, and local tax liabilities that may result from such Payments and the Released Parties (defined below) shall bear no responsibility for such liabilities.

Section 14 a. i) 2., concerning distribution to "the Class Representative," is of concern to the Court. First, it is not clear what mechanism the Class Representative would use to submit "an Election Not to Participate in Settlement," because that form, attached as Exhibit D to Schalet's declaration, is defined in the definitions section as "the form by which a Class Member may elect to exclude himself or herself from the Settlement," and it is not intended by the proposed settlement agreement to be provided to or used by "the Class Representative." Second, even assuming that the named plaintiff would submit an "Election Not to Participate in Settlement" form to the claim administrator, that would leave this action without the plaintiff. However, "a class has a legal status separate from the named plaintiff, thus, should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class." In re Currency Conversion Fee Antitrust Litig., No. MDL No. 1409, M 21-95, 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005) (quotation marks and citation omitted). Thus, any term that purports to suggest a circumstance in which "the Class Representative" may elect to submit an "Election Not to Participate in Settlement" form, in the instant action, is unfair to the putative class members, because such an act would unfairly

21

disadvantage putative class members, whose "rights in this litigation were protected as of the filing date of the complaint," In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005).

Section 14 a. i) 2., entitled "Distribution of the Settlement Fund," also purports to provide the defendant the unilateral right "to nullify the Settlement" in the event the class representative "has not submitted an Election Not to Participate in Settlement."[2]  This unilateral right of the defendant to nullify the settlement agreement in the event the class representative opts out of the class is improper, unenforceable and not in the interest of the putative class members.

Section 14 provides that "the Settlement Administrator will distribute the proceeds of the Settlement Fund" by making payments from the settlement fund to: (a) "every Claimant, his or her Individual Allocation," (b) "the Class Representative . . . in addition to his Individual Allocation, Class Representative's Service Award of $20,000.00 or in any lesser amount directed by the Court"; and (c) "Class Counsel, the Class Counsel Attorneys' Fees in the amount of $108,333.33 plus costs and expenses of $559.37, or in any lesser amount directed by the Court." The definitions section 2 of the proposed settlement agreement provides:

> t. "Settlement Payment" or "Payment Amount" means the payment by the defendant of Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00) to fund the Settlement Fund.  The Settlement Payment will be the sole source and maximum payment by Defendant to fund, under this Settlement, the (i) Settlement Shares, (ii) the Class Representative's Service Award, (iii) Defendant's share of payroll taxes on all payments from the Settlement Fund to which such taxes are applicable; (iv) the Class Counsel Attorneys' Fee Payment (including cost), and (v) the reasonable fees and expenses of the Settlement Administrator.  Under no

---

[2]  The proposed settlement agreement suggests that the failure of the class representative to submit an Election Not to Participate in Settlement "would be grounds for the Defendant to nullify the Settlement."  The Court assumes that this is an error and the parties meant to say that the class representative's submission of an Election Not to Participate in Settlement would be grounds for the defendant to nullify the settlement, not his failure to submit that form.

circumstances shall Defendant be obligated to pay any amount pursuant to this Settlement except as set forth in this paragraph.

u. "Settlement Pool" means that the net amount remaining when approved attorneys' fees/costs, claims administration fees, Defendant's share of payroll taxes on payments to class members, and the approved Class Representative's Service Award are deducted from the Payment Amount.

Notwithstanding: (1) the contentions, in the definitions section, that the Settlement Payment of $325,000 includes "the reasonable fees and expenses of the Settlement Administrator" and that the Settlement Pool means the amount remaining after the approved attorneys' fees and "claims administration fees" are deducted; and the fact that the "Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing" explains, in the section entitled "Summary Of Terms Of The Proposed Settlement" that "the costs of administering the Settlement" will be deducted from the settlement payment of $325,000, section 14, Distribution of the Settlement Fund, does not provide for the payment of the claim administrator's reasonable fee.  Moreover, the plaintiff's motion does not include any request for the claim administrator's reasonable fee.  The inconsistent terms referencing the claim administrator's reasonable fee in various sections of the proposed settlement agreement are ambiguous, confusing and misleading, and as such, invalid.

Section "15. No Effect on Other Benefits," in the settlement agreement, provides:

The Individual Allocations will not create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by any Released Parties (such as 401(k), pension, bonus, severance, or deferred compensation plan), and no payment made pursuant to this Settlement will be compensation for purposes of such plans/programs, require any contribution or award under such plan/program, or otherwise modify coverage, contributions, or benefits under such plans/programs, and the Participating Class Member will be deemed to have waived all such benefit or compensation plan or program claims, whether known or unknown by them [sic], as part of their [sic] release of claims under this Settlement.

This provision appears to apply only to "Participating Class Members," not to the class representative or "Claimants."  Although the precise distinction between "Claimant" and

"Participating Class Member," as each is defined in the definitions section of the proposed settlement agreement, is not clear to the Court, the unilateral waiver by "the Participating Class Members" is improper and unfair because it deprives the class representative and "Claimants" of that right, which is given only to "Participating Class Members."

Section "16. Release of Claims," in the settlement agreement, provides, inter alia:

a. The Class Representative's Release of Claims: In consideration of the Service Award approved by the Court and awarded to the Class Representative and the Released Parties' Release of Claims against the Class representative set forth below, as of the date the Service Award is paid, Plaintiff on behalf of himself and his heirs and assigns, hereby releases Defendant and its past, present and future parents, subsidiaries affiliates, successors and predecessors, including IKON Office Solutions and its affiliates, and each of such entities' directors, officers, employees, insurers, lawyers, and agents ("Released Parties") from any and all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising before the date the Final Approval Order is entered by the Court including, but not limited to, those claims that were asserted in the Action; all other claims arising under the Fair Labor Standards Act ("FLSA"), the New York Labor Law and its implementing regulations, and all other federal, state, and local statutes, regulations, and common law theories, all other claims for lost wages and benefits, wage deductions, interest, and penalties; all claims for wage, emotional distress, punitive damages, and attorneys' fees and expenses arising under federal, state, or local laws for discrimination, harassment, retaliation, and/or wrongful termination, such as, by way of example only, claims pursuant to the Civil Rights Act of 1866, as amended, 42 U.S.C. section 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e *et seq.*, the Americans with Disabilities Act, 42 U.S.C. section 12101 *et seq.*, and all claims arising under the law of contract and tort relating to Plaintiff's employment by Defendant ("Class Representative's released Claims"). For avoidance of doubt, this release is intended by the Parties to be a full and general release of all available claims and rights.

According to section 16 a., the class representative's release of his claims is made "[i]n consideration of the Service Award approved by the Court," and "as of the date the Service Award is paid, Plaintiff on behalf of himself and his heirs and assigns, hereby releases" the "Released Parties" from "any and all claims." Unlike the release of the class representative's claims, made solely "[i]n consideration of the Service Award approved by the Court" and

24

effective "as of the date the Service Award is paid," each "Participating Class Member['s]" and

"Claimant['s]" release is made "[i]n consideration of his or her eligibility for an Individual

Allocation, as of the date the Final Approval Order is entered by the Court." Thus, the class

representative's release is contingent solely upon the payment of his service award and effective

only "as of the date the Service Award is paid." Given that the class representative's service

award payment is not permissible under New York law, see Flemming v. Barnwell Nursing

Home & Health Facilities, Inc., 56 A.D. 3d 162, 166, 865 N.Y.S.2d 706, 709 (App. Div. 3rd Dept.

2008) ( "New York law does not authorize incentive awards for named plaintiffs in class

actions."), and is discretionary under FLSA, see Frank v. Eastman Kodak Co., 228 F.R.D. 174,

187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within

the discretion of the court.") (citation omitted), it is apparent that the class representative's release

may not occur. Notwithstanding the puzzling fact that the defendant agreed to this provision,

releasing the named plaintiff's claims solely upon the payment of the service award to him is

contrary to the purpose of the remedial statutes at issue and the interests of the putative class

members. Furthermore, one of the main purposes of the settlement agreement is to bring finality

to this action, and the class representative's release contingency is inconsistent with and contrary

to that purpose. As such, the term is unfair and invalid.

     Section 16 also provides:

> Class Counsel's Released Claims. In consideration of the Class Counsel Attorneys'
> Fees and Costs Payment, as of the date of the Final Approval Order is entered by the
> Court, Class Counsel hereby releases any claims, causes of action, demands, rights,
> and liabilities of every nature and description for attorneys' fees, costs, and expenses
> against the Released Parties arising from or related to the Action, including but not
> limited [to] claims based on the FLSA, the NYLL, or any other statute or law ('the
> "Class Counsel's released Claims").

As mentioned above, class counsel is not a party to this action or to the settlement agreement before the Court.  Inasmuch as class counsel is not a party to the action or the settlement agreement, class counsel's release is improper.

Section "17. Confidentiality," in the proposed settlement agreement, provides, inter alia:

> Other than necessary disclosures made to the Court, the Class Representative and Class counsel shall not directly or indirectly disclose the fact or the terms of the settlement to the media, press, or any website, or generally to the public, provided that if Class Representative, Class Counsel, Defendant or their attorneys receive inquiries from the media, they may state only that the Action has been resolved on the terms set forth in the Stipulation that was publicly filed.

"Nondisclosure agreements in FLSA settlements contravene public policy. . . .  Class counsel may agree to not publicize the settlement, but Plaintiffs and class members cannot be required to keep silent."  Fujiwara v. Sushi Yasuda Ltd., __ F. Supp. 3d __, 2014 WL 5840700, at *5 (S.D.N.Y. Nov. 12, 2014).  The confidentiality provision appears to bind only the class representative and class counsel and not the absent class members, and it does not bind the defendant and its counsel to the extent it binds the class representative and class counsel.  The confidentiality provision in the proposed settlement agreement is unfair and unenforceable as against public policy.

Section "22. Modification," in the proposed settlement agreement, provides, inter alia, that "[t]his Settlement may not be discharged except by performance in accordance with its terms as approved by the Court or by a writing signed by the Parties."  To the extent that this section appears to suggest that the settlement agreement may be discharged "by a writing signed by the Parties," without explaining what that means, that part of section 22 is vague and invalid.

26

***Conclusion***

For the foregoing reasons, the Court finds that the proposed settlement agreement is substantively unfair, and the plaintiff's motion, Docket Entry No. 16, is denied.

Dated: New York, New York            SO ORDERED:
       January 30, 2015

                                     _Kevin Nathaniel Fox_
                                     KEVIN NATHANIEL FOX
                                     UNITED STATES MAGISTRATE JUDGE

27